## COLONIAL INSURANCE COMPANY OF CALIFORNIA

### V.

## FRED RAINEY, JR.

Record No. 870186

March 3, 1989

Present: All the Justices

*John R. Turbitt (John H. Johnston; Slenker, Brandt, Jennings & Johnston*, on briefs), for appellant.

*John B. Delaney (Gretchen A. Marshall; Delaney & Giammittorio*, on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

In this insurance case, we decide a question of coverage that arises under an uninsured motorist endorsement to a motor vehicle liability policy.

The facts are undisputed and are presented in the record by oral stipulation of counsel made during the trial below. In 1983, Cirot P. Augustin was driving an uninsured motor vehicle along Interstate Route 66, presumably in Fairfax County, when he "had a tire blow-out." Augustin alighted from the vehicle, went to the trunk of the car to use the spare tire, found it had insufficient air pressure, and walked away from the vehicle carrying the spare. He intended to find a service station so the tire could be fully inflated. After walking approximately 200 feet from the disabled

vehicle, Augustin climbed an embankment in order to reach Lee Highway. Near the top of the embankment, he slipped, fell, and dropped the tire. It rolled down the embankment striking the windshield of a bus being operated on Route I-66 by appellee Fred Rainey, Jr., injuring him.

In 1985, Rainey filed a negligence action against Augustin seeking recovery in damages for personal injuries arising from the accident. Because Augustin had been driving an uninsured motor vehicle, Rainey served the suit papers upon his own motor vehicle insurer, appellant Colonial Insurance Company of California.

In 1986, the insurer filed the present declaratory judgment proceeding against Rainey. The insurer asserted that it provided Rainey with uninsured motorist coverage through its policy contract. It asked the court to determine that Augustin's acts were not within the scope of that coverage and that Rainey would not be entitled to secure satisfaction from the insurer for any judgment he might obtain against Augustin.

At trial, neither a copy of the insurance policy nor the endorsement in question was introduced in evidence. On brief, the parties say that the endorsement provided as follows:

> "Colonial will pay in accordance with Section 38.1-381 of the Code of Virginia and all Acts amendatory thereof or supplementary thereto, all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle."

Following consideration of the stipulation and argument of counsel, the trial court ruled in favor of coverage and against the insurer. The court determined that Augustin was an "operator" within the meaning of the endorsement "even though he [had] removed himself from the car and [was] some distance from it." The court further found that the accident arose out of the "maintenance or use" of the vehicle, as provided by the endorsement. We awarded the insurer this appeal from the November 1986 order dismissing the motion for declaratory judgment.

The issue to be decided is narrow. The insurer says its endorsement "mirrors" the language of the uninsured motorist statute. In pertinent part, the statute provides:

> "[N]o policy or contract of bodily injury or property damage liability insurance relating to the ownership, maintenance, or use of a motor vehicle shall be issued or delivered in this Commonwealth to the owner of such vehicle . . . unless it contains an endorsement or provisions undertaking to pay the insured all sums that he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle . . . ." Code § 38.2-2206 (formerly § 38.1-381).

The insurer contends that the endorsement requires four criteria to be met before it becomes obligated under the policy. First, payment must be made in accordance with the uninsured motorist statute. Second, an "owner" or "operator" of an uninsured motor vehicle must exist such that the injured party may recover damages from such person. Third, the claimant must have sustained some bodily injury or property damage. Fourth, the injury or damage sustained must have been caused by accident and arise out of the ownership, maintenance, or use of the uninsured motor vehicle.

The insurer admits, for purposes of this proceeding, that the first and third elements have been met. Likewise, it concedes that the fourth element has been fulfilled stating that the accident arose out of "the maintenance of the uninsured motor vehicle."

The insurer says that its "primary contention" is based on the second element. It argues that "no operator of an uninsured motor vehicle exists" because Augustin did not qualify as the "operator" of the vehicle "when he stood some 200 feet away" from it.

In support of this view, the insurer cites a definition appearing in § 46.1-1(17) of the Motor Vehicle Code ("'Operator' or 'driver'" means "[e]very person who . . . drives or is in actual physical control of a motor vehicle upon a highway . . ."). It also relies on insurance case law, specifically *Ayres* v. *Harleysville Mutual Casualty Co.*, 172 Va. 383, 391, 2 S.E.2d 303, 306 (1939) (the word "operate" as used in policies of automobile insurance means to regulate and control the management or operation of the vehicle) and *Insurance Company of North America* v. *Perry*, 204 Va. 833, 134 S.E.2d 418 (1964), to be discussed *infra*.

In addition, the insurer relies on certain of our criminal cases involving drunk driving where we held, in various factual situations, that the accused was guilty of operating the vehicle while under the influence of alcohol when he was manipulating the mechanism of his vehicle, although it was not moving. *See, e.g., Nicolls* v. *Commonwealth*, 212 Va. 257, 184 S.E.2d 9 (1971), and *Gallagher* v. *Commonwealth*, 205 Va. 666, 139 S.E.2d 37 (1964). The insurer also relies on cases from other jurisdictions to support its overall contention that Augustin was not the "operator" of the motor vehicle at the time of the incident, because he was not in actual physical control of the vehicle nor was he manipulating the mechanism of the car.

■ We do not agree with the insurer. Initially, we observe that the insurer's emphasis on the term "operator" as one who is actually manipulating the mechanism of the vehicle and controlling it leads to an illogical result in the context of this endorsement. To embrace its view would mean that the policy provision affording coverage for accidental injury arising from the maintenance of an uninsured vehicle would seldom actually provide coverage if the insured had to be in actual physical control of the vehicle at the same time he was "maintaining" it. Ordinarily, an operator must be outside the vehicle, not controlling it as a driver, in order to perform maintenance on it.

■ More importantly, however, we are satisfied that the requirement that a driver of an uninsured motor vehicle be in actual physical control of the vehicle in order to be an "operator," as that term is employed in other situations, is not the *sine qua non* for resolution of the present question. The endorsement does not limit coverage only to persons *while* operating a vehicle. The word "while" is not even used in connection with the word "operator." Instead, we conclude, as Rainey argues and as the trial court held, that the term "operator," according to the plain language of the policy, identifies the person from whom recovery may be had for injury or damage, and that one's status of "operator" is not relinquished or lost by merely leaving the vehicle.

■ The clear policy language places limitations, however, on the requirement that the insurer pay the sum recoverable from the "operator" of an uninsured motor vehicle. First, the insured must be legally entitled to recover damages from the person identified as the "operator." *See Aetna Casualty and Surety Co.* v. *Dodson*, 235 Va. 346, 350-51, 367 S.E.2d 505, 508 (1988) (statutory and

uninsured motorist endorsement language "legally entitled to recover as damages" held to be plain and unambiguous, and to interpose "as a condition precedent to the UM insurer's obligation, the requirement that the insured have a legally enforceable right to recover damages from an owner or operator of an uninsured motor vehicle").

Second, the policy specifies that the injuries must be "caused by accident." Finally, the endorsement provides that the accidental injury must "arise out of " the ownership, maintenance, or use of the uninsured motor vehicle. In other words, under the present circumstances, when the "operator" is not inside the vehicle in control of it, there must be a direct, causal connection between the "operator," the accidental injury, and the maintenance or use of the vehicle.

These criteria have been met in this case. Augustin has been identified as the operator of the uninsured motor vehicle. There has been an accidental injury and Augustin is potentially liable to the insured Rainey. The insurer concedes that the accident arose from the maintenance of the vehicle. Specifically, Augustin was in the process of taking part of the vehicle, the spare tire, to be serviced when the negligent act occurred. The act was reasonably close in point of time to Augustin's departure from the vehicle and at a reasonably close distance from the uninsured vehicle. Consequently, the necessary direct causal connection existed and coverage applies.

The insurer relies heavily on the Court's 1964 decision in *Insurance Company of North America* v. *Perry, supra. Perry* is inapposite because the issue was different from the issue in the present case.

There, a city police officer parked his police cruiser and walked along a roadway to serve a warrant. When he was 164 feet from the vehicle, he was struck and killed by the tortfeasor operating an uninsured automobile. In that case, unlike this, the question was whether the officer, at the time of the accident, was an insured under the provisions of the city's automobile liability policy when read in the light of the uninsured motorist statute. Specifically, the question was whether the officer was one who "was using" the police cruiser at the time of the accident. The insurer conceded that the officer would have been covered if he had been operating or occupying the vehicle at the time of the accident. The Court held, as a matter of law, that the accident did not occur

while the officer was using the vehicle and coverage did not apply under those circumstances.

For these reasons, the judgment of the trial court will be

*Affirmed.*